CASE No. 902.

## CHERAW & CHESTER RAILROAD COMPANY v. WHITE.

1. Where the complaint alleges a corporate existence in the plaintiff, and no facts or circumstances appear upon the face of the complaint showing in plaintiff a want of corporate authority, or of capacity to sue, a demurrer to the complaint under Class 2, of Section 167 of the code, cannot be sustained.

2. A reference to its charter in the complaint of a corporation plaintiff does not so incorporate the charter into the complaint as to render the state-

ment of its right to sue defective, by reason of the failure to allege the performance of conditions precedent to its corporate existence.

3. The performance of conditions precedent to a corporate existence is a matter of proof, and a failure to allege such performance is not ground for demurrer under the second class of Section 167 of the code.

4. The charter of a railroad company conferred corporate powers in terms importing an immediate grant, with a proviso "that said persons shall commence operations upon said road within two years after the passage of this act, and complete the same within five years." *Held*, that the requirements of the proviso were not conditions precedent to a corporate existence.

5. The charter of a railroad company permitted subscriptions in labor, materials or land, as well as in money; in action brought by the corporation to recover a stock subscription, the complaint alleged that the "defendant subscribed to the joint stock of the said company four hundred dollars, for and in consideration of eight shares of the capital stock," and also alleged a demand of payment. *Held*, on demurrer, that the complaint sufficiently stated that the subscription was payable in money and was due before action brought.

6. The word "subscribe," in contracts of this nature, has a distinctively definite sense, and includes the idea of a promise to pay the amount subscribed in the manner agreed upon.

7. Where a demurrer to a complaint is overruled, the Circuit judge may require the payment of all costs up to that time, as a condition of leave to answer.

---

Before WALLACE, J., Chesterfield, January, 1879.

This was an action commenced in January, 1878, by the Cheraw and Chester Railroad Company against Ellison B. White. The complaint is as follows :

The above named plaintiff, complaining of the defendant, respectfully shows to this court:

1. That on or about the ——— day of ———, 1873, the said defendant subscribed to the joint stock of the above named company $400, for and in consideration of eight shares of the capital stock of said company at $50 per share, the said subscription being made to aid in the construction and carrying into operation a railroad between the towns of Cheraw and Chester, in said state, pursuant to the provisions of an act of the legislature, entitled "An act to charter the Cheraw and Chester Railroad Company," approved February 27th, A. D. 1873.

2. That the plaintiff is and ever has been ready since then,

upon the payment of said sum of money, to deliver to defendant a certificate of said stock; and defendant, although required and called on to pay the money so subscribed to plaintiff, according to the true intent and meaning of said subscription, has utterly refused and failed to pay the same or any part thereof.

Wherefore plaintiffs demand judgmeut for the sum of $400, and interest thereon from January 1st, A. D. 1877.

To this complaint the defendant demurred, upon the grounds stated in the judgment of the Circuit Court.

In the brief it is stated that at the hearing "his Honor suggested to defendant's counsel that argument upon the incorporation of the company was unnecessary, as the act of the legislature granting the charter would determine that matter."

The judgment of the Circuit Court is as follows:

This is an action brought by the plaintiff to recover the amount subscribed by the defendant to the capital stock of the Cheraw and Chester Railroad Company. The defendant has filed a demurrer to the complaint, alleging, as the first ground thereof, that plaintiff has not a legal capacity to sue, and specifies thereunder, *First.* That the act of incorporation is not alleged in the complaint. *Second.* That the corporators are not named therein, and no authority to enter into the contract is alleged. *Third.* And that the company is not chartered. Now as to this ground and the specifications, as recited, the court, after due reflection, has reached the conclusion that the plaintiff is a corporate body, and so constituted by the act of the general assembly, passed on February 27th, 1873, entitled "An act to charter the Cheraw and Chester Railroad Company," and that it has, by reason of its organization under said act, been clothed with authority to sue. The act granting the charter being general and not a special act of the legislature, I am of opinion that it was not necessary for the plaintiff in the complaint to allege its corporate existence. It would be unnecessary to prove that the plaintiff was a corporation unless the defendant, in his answer, had alleged that the plaintiff was not a corporation; and, as a general rule, it is unnecessary to allege that which need not be proved. See *Voorhies' Code* (*9th Rev. ed.*) 213, and the various authorities there referred to.

If the plaintiffs were a foreign corporation, it might be necessary to allege its corporate existence; but, in the present instance, it is *domestic*, and the court is satisfied that there is no necessity for such allegation in the complaint. And here it may be observed that the defendant, by making the alleged subscription, had, in a measure, acknowledged the corporate existence of the plaintiff. The court can see no necessity for naming the corporators mentioned in the charter, nor for alleging any more authority for entering into the contract than is alleged in the complaint. The act of the legislature above referred to shows the grant of the charter to the company; and the question raised by the defendant that the plaintiff is not a chartered company, would appear to be more a question of fact than of law, unless it be assumed that the act of the legislature is a nullity. It appears, therefore, that the demurrer cannot be sustained on the first ground and the specifications thereunder.

The second ground of demurrer is, that the complaint does not state a cause of action; and the specifications thereunder are as follows, to wit: *First*. In that that it does not state that the subscription was to be paid in *money*. *Second*. In that that it does not allege the time *when* or the terms upon which the contract was made. *Third*. In that that it does not allege that the amount sued on was due before the commencement of the action. *Fourth*. In that it does not state a promise on the part of defendant to pay. On examination of the allegations of the complaint, the court finds that the complaint is not as full and complete as it might have been on the points referred to, but that, for the purposes of substantial justice between the parties, it is sufficient. The code does not favor a technical construction of pleadings, but only looks to the substance. And if the cause of action be substantially alleged, whether it be in full and complete form or not, it will meet the requirements of the code. If the allegations of the complaint on any of the points referred to were a little vague and indefinite, the defendant, by motion, could have required the plaintiff to make such allegations more definite. The court is of opinion that for the purpose of substantial justice between the parties the complaint is sufficient. The demurrer must, therefore, be overruled. The defendant,

however, on the payment of all costs which have accrued, may be allowed to answer over.

The defendant appealed from this judgment upon the grounds taken in his demurrer, and upon the additional grounds, (1.) That his Honor erred in declining to hear argument on the question of law raised by the demurrer, whether the plaintiff is a chartered company, and in determining that question as a question of fact, without evidence or argument; and (2) that his Honor erred in requiring defendant to pay more costs than the costs of the demurrer.

*Messrs. Prince & Caston,* for appellants.

*Messrs. R. E. Allison* and *M. J. Hough,* contra.

August 14th, 1880.   The opinion of the court was delivered by

Willard, C. J.   This action was brought to recover the amount of a subscription to the capital stock of the plaintiff company, alleged to have been made by the defendant, and not duly complied with on his part.   The defendant demurred to the complaint on various grounds.   This demurrer was overruled by the Circuit Court, and leave to answer granted on terms. From this decision the defendant now appeals.

The grounds of appeal follow the line of the reasoning of the Circuit opinion ; but as the question now is, whether any *ground* exists for sustaining the conclusion reached by the Circuit Court, the sufficiency of the grounds stated in the demurrer will be considered in the order therein stated.

The first ground of demurrer is, that the plaintiff has no capacity to sue.   Several propositions are stated under this ground of demurrer that, in substance, involve the general proposition that the plaintiffs have received, by law, only authority to become a corporation upon the performance of certain conditions precedent, and that the complaint contains no allegations showing that such conditions have been performed.   Two questions are here presented : *First.* Was the plaintiff bound to do more than to assert its alleged rights *in the character* of a corporation, leav-

ing the question of its right to sue in that character to be disputed by the defendant's answer as an issuable fact? If so, then the demurrer was clearly bad in this respect. *Second.* Whether by the act entitled "An act to charter the Cheraw and Chester Railroad Company," (15 *Stat.* 442), the corporators therein named received immediate competency as a corporation under the name and style in which the plaintiff sues?

The grounds upon which a demurrer to a complaint may be supported being, by the code, reduced to six, enumerated in Section 167, it becomes necessary to inquire whether any such ground of demurrer 'exists in the present case? The second ground stated in Section 167 is the only one that can possibly include the objections under consideration, and that is where it appears on the face of the complaint *that the plaintiff has not legal capacity to sue.* It may be conceded that the want of authority to act as a corporation by a plaintiff suing in that character, is a case where *the plaintiff has not legal capacity to sue* in the sense of Section 167. It may also be conceded that when it appears, as matter of legal conclusion, that the plaintiff does not possess such capacity, a demurrer may be maintained. This want of legal capacity may appear either as a general incapacity attached to the character in which the plaintiff sues, or in facts and circumstances showing that the plaintiff is not entitled to the character in which he sues, or to any character in which he might have capacity to maintain the suit. It is presumable that every corporation having legal existence and rights, has, as such, capacity to maintain an action, therefore this is not a case in which it appears that the character in which the plaintiff sues is one to which the capacity to maintain an action is not ascribed by the law. The only question, then, that can be considered, as raised by the ground of demurrer under examination, is, whether facts and circumstances appear showing that the plaintiff is not entitled to appear in the character in which it has made itself a party. The general question, whether these facts and circumstances may, in any case, be made to appear by matters of which the court is bound to take judicial notice, such as the public statutes, or whether they must be, in all cases, pleaded so as to create an issue of fact, need not be considered. It is clear that the exist-

ence of a particular corporation is a question of fact, and cannot be ascertained as a mere conclusion of law, except upon an admitted state of facts. At common law this was necessarily so, for corporations were created by letters patent of the Crown, or existed by virtue of long usage, so that the question of the existence of a corporation could only be legally ascertained upon proof of a royal grant, or of the long use of such corporate franchise, and could, for that reason, never be a pure question of law. Unless it appears that corporations can exist with us only under direct statute sanction, there is no basis for an argument that the nature of the issue has undergone any change in this respect. Although corporations in this country are usually created by statutes, public or private, yet it by no means follows that no such corporation can exist unless direct authority can be found conferred for that purpose by the statute. There may be corporations that can only show as their authority grants from the Crown of Great Britain, or some other governments once exercising sway over parts of the territory now occupied by the United States, issued while such government held sovereignty here. A grant from the Crown creating a franchise would be entitled to the same force and effect as a grant of lands, grantable by the Crown. But resort to such source of authority is not likely to occur in such a case, for, if corporate franchises so granted have been continuously exercised until the present day, the other principle of the common law, namely, that of long, undisputed use, would furnish a source of proof presumably more accessible. There is no ground for saying that the principles of the common law as to the effect of the use of corporate franchises for long periods of time in establishing title to use such franchises have undergone any change in this country. Such being the case it is not possible that the courts should have judicial knowledge of all the facts and circumstances enabling them to say whether any party claiming such franchise is entitled thereto. At all events the character of the issue in such cases, as settled by the principles of the common law, has undergone no change by direct statute authority, and, therefore, remains unchanged.

The other case that may arise under the second class, men-

tioned in Section 167, is where the facts and circumstances appear in the complaint, from which it is claimed, as an inference of law, that the plaintiff has no capacity to sue. It should be observed that the code does not make it a ground of demurrer; that the complaint does not set forth the facts and circumstances showing the plaintiff to be entitled to sue in the character in which he has come into court. On the contrary, the complaint itself must contain evidences that the plaintiff has *no such* capacity. This is what is plainly meant as to its *appearing on the face of the complaint* that the plaintiff has no legal capacity to sue. In a word it is no ground of demurrer; that it does not appear by the complaint that the plaintiff has legal capacity to sue, but only where such facts and circumstances appear as legally exclude the inference that the plaintiff has such capacity.

The foregoing disposes of the principal question under the first ground of demurrer, as above stated, for the plaintiff not being bound to state the facts and circumstances entitling it to sue in the character set forth in the complaint, was not bound to set forth any conditions precedent upon which it might alone be authorized to exercise corporate franchises, such as are asserted by it, nor to aver that such conditions precedent were duly performed. But the argument of the appellant may be construed as including the proposition that the plaintiffs having made reference to an act of the legislature as its authority to make the contract sued upon, the complaint must be read as if all the provisions of the act were set out and pleaded at length in it, and, therefore, under the view which the appellant takes of that act, it would appear that there were certain conditions to be performed before the plaintiff could claim legally to exercise the powers of a corporation. As the plaintiff was not bound to set forth the facts and circumstances that entitle it to exercise the powers of a corporation, it is not clear upon what ground the provisions of the act can be incorporated in its complaint against its will. It is true that the complaint refers to the act to charter the plaintiff company, but that is alleged for the purpose of showing the nature and legal effect of the contract sued upon, for every subscription to the capital stock of a corporation, when a binding contract, is such in virtue of the charter or organic

compact under which the corporation acts, and, therefore, such charter, whether set out in words or by reference to the statute constituting it, is a proper part of the cause of action alleged. Such being the only purpose for which reference is made to the act chartering the plaintiff, it cannot, with any propriety, be said that the plaintiff has attempted to set forth its right to sue as a corporation, and has made a defective statement of such right.

But, assuming for the present purpose that the act is to be regarded, as set forth, as part of the averments of the complainant, and, also, that the appellant's construction of the act is correct, namely, that it imposes upon the plaintiff the performance of certain acts as conditions precedent to receiving and exercising the powers of a corporation, and, further, that the plaintiff failed to set forth the performance of such conditions specifically, or in the general manner permitted by Section 186 of the code, still, at most, that would show only defect of proof to establish the right of the plaintiff to sue as a corporation, but affords no positive proof tending to show, affirmatively, that such conditions precedent have not been complied with, which is the only proof available to sustain a demurrer on the ground of want of legal capacity to sue. The demurrer admits the right to sue, unless the facts of the case, as spread out in the face of the complaint, show that such right cannot exist at law ; a mere case of want of proof cannot produce such an effect.

But the statute does not admit of the construction which the appellant seeks to put upon it. The act to charter the plaintiff company, passed February 27th, 1873, (15 *Stat.* 442,) confers corporate powers on the corporators named, in terms importing an immediate grant, with the following proviso annexed : " Provided that said persons shall commence operations upon said road within two years after the passage of this act, and complete the same within five years." The period of completion is stated by Section 6 at seven years, but this conflict of time is not material to the present question. The question is whether the proviso can have the effect to convert a grant of the corporate franchise, made in terms that import an immediate grant, into one taking effect only upon the happening of a certain contingency. If the purpose intended by the proviso cannot be fully

accomplished without a limitation of the broad sense of the language conferring the franchise, then such effect can be accomplished consistently with the rules of construction, for, in that case, the proviso would be necessarily interpreted as a condition in substance and effect. As a condition subsequent this is undoubtedly the effect of the proviso, but does it contain, in itself, anything that imports a necessity that it should operate as a condition precedent? Two things are to be considered in this respect: *First.* What is essential to the full efficacy of the matter of the proviso itself? *Second.* What would be the effect of allowing it to stand as a condition precedent on the completeness of the powers granted for the purpose intended by the grant, and to which the terms of the proviso stand as a condition? It certainly was intended that the corporators should have all the powers and capacity properly incident to a railroad corporation for the purpose of enabling it to commence and complete the road in the times prescribed by the law, for it must be assumed that the construction of the road was deemed a public benefit, and that the acquisition of that benefit to the public was the true consideration of the grant, and, in this light, the proviso must be regarded as directly intended as a means of hastening its construction. This view also excludes the idea that the proviso was intended to limit the capacity or powers of the company to construct the road within the times prescribed for that purpose. It must certainly be assumed that the possession of corporate powers during the time that the company was organizing and acquiring the capital and credit requisite to construct the road was a material aid toward the accomplishment of that result. It is fair, then, to assume that the grant, in terms importing immediate corporate capacity, was intended to operate as such for the purpose of conferring on the corporation the most perfect means for accomplishing that which it was the purpose of the proviso to secure. So far then from its being essential to the efficacy of the proviso that the sense of the terms granting, directly, the corporate franchise should be narrowed, the purpose of the proviso is best subserved by holding these powers intact according to the terms in which they were granted. If, at the end of two years, the corporation had not

commenced to construct the road, every object intended to be secured to the state and to the public, by the limitation, would be fully attained, even if the company had at once, upon the granting of the charter, become a corporation. The extinguishment of the franchise of building and operating a railroad would have followed, and the right to exercise the functions of a corporation would have fallen with it as an accessory. On the other hand if the grant is held to be subject to a condition precedent, by reason of the limitation as to commencing work in two years, the argument that would produce that result would go a step further and make the completion of the road a condition precedent. In that case the anomaly would be presented of a company undertaking the construction and completion of a work of such magnitude without the powers of a corporation, and only hoping to obtain such powers when the work had been accomplished. Such an intention cannot be ascribed to the statute. It is clear that the demurrer was properly overruled as it regards the ground just considered.

The second ground of demurrrer is that the complaint does not state facts sufficient to constitute a cause of action, and, under this ground, it is objected that it does not appear by the complaint that the contract sued upon was to pay money, while its charter permitted plaintiff to take subscriptions in labor, materials, or land as well as money. The complaint clearly and distinctly charges that the subscription was for the payment of money. It states that " the said defendants subscribed to the joint stock of the said company $400, for and in consideration of eight shares of the capital stock." Unless the plaintiff availed itself of the privilege of making a special contract calling for payment in labor, materials or land, it is unnecessary to notice the provision intended for such cases. The law will presume the contract to have been made with reference to the payment of money unless the contrary appears, for that is the most general form of such contract. There can be no doubt as to the nature of the contract laid in the complaint as it regards the proper mode of satisfying it.

It is objected that the complaint does not state the time when or the terms upon which the contract was entered into. There

is nothing in the charter that prevented the parties from effectively contracting in terms requiring immediate payment or payment on demand. The contract as laid must be construed at all events as calling for payment on demand, if not for immediate payment. The terms of the contract appear sufficiently to give it binding force by referring to the averments of the complaint and the provisions of the charter. There was a lawful subject-matter, namely, a certain number of shares of the capital stock of the company, made vendible by the charter; there were also competent parties, and a price agreed upon; these are all the requisites to a valid contract.

The third objection under the second ground of demurrer is answered by what has just been said; as the plaintiff alleges a demand before action brought, the money must be regarded as due before the commencement of the action. It was not necessary to add to the complaint a distinctive promise to pay. The word "subscribe," as applied to contracts of this nature, has a definite technical sense, including in it the idea of a promise to pay the amount subscribed in the manner agreed upon, and the act in question must be regarded as using it in that known sense.

The statement in the grounds of appeal that the appellant was not permitted to submit an argument on certain questions, is not supported by the record.

The objection to the allowance of full costs as the condition on which the defendant should be permitted to answer over, is not well taken. The permission, in such cases, cannot be claimed as matter of right, but rests in the discretion of the court, and may be allowed when the demurrer has been interposed in good faith. *Code,* § 195. Accordingly it was competent for the court to grant such relief on terms. We see no error in law in the mode in which the court has exercised its discretion in the present case.

The judgment must be affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.